AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

United States of America
v.

Anthony Barrera

*Defendant(s)*

Case No. 3:25-mj- 00132

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 24, 2025 in the county of Douglas in the District of Oregon , the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and (b)(1)(B)(ii) | Possession with intent to distribute 500 or more grams of a mixture or substance containing methamphetamine, a Schedule II Controlled Substance, and Possession with intent to distribute 500 or more grams of a mixture or substance containing cocaine, a Schedule II Controlled Substance |

This criminal complaint is based on these facts:

See attached affidavit of FBI Task Force Officer Jarrett Miller

☑ Continued on the attached sheet.

/s/ FBI TFO Jarrett Miller by Telephone
*Complainant's signature*

Jarrett Miller, Task Force Officer, FBI
*Printed name and title*

Attested to b¸ the a¸¸licant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 9:31 a.m. a.m./p.m.

Date: May 26, 2025

*Judge's signature*

City and state: Portland, Oregon

Honorable Jeffrey Armistead, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss: AFFIDAVIT OF JARRETT MILLER

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Jarrett Miller, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I have been sworn by the U.S. Department of Justice Federal Bureau of Investigations (FBI) as a Special Federal Officer authorizing me to exercise the powers of enforcement personnel set forth in Section 878, Title 21, Unites States Code. I am a Detective with the Multnomah County Sheriff's Office assigned to the Special Investigations Unit (SIU) and have been with the Sheriff's Office since the hire date of September 11, 2017. I currently hold a Basic and Intermediate Police Officer Certification – accredited by the Oregon Department of Public Safety Standards & Training (DPSST). I have attended hundreds of hours of police training including the International Narcotics Interdiction Conference, the California Narcotics Officers Conference and Oregon Narcotics Enforcement Conference which have taught the current trends in the illicit drug world, the basic profile of drug traffickers, the handling of confidential informants and more.

2. During my employment as a sworn law enforcement officer, I have investigated hundreds of criminal incidents. Those criminal incidents include, but are not limited to: DUII's, assaults, thefts, criminal mischiefs, robberies, burglaries, forgeries, identity thefts, weapons offenses, narcotics offenses, sex offenses and fugitive apprehension. I am familiar with criminal investigations and the collection of evidence, which support those criminal investigations and have personally conducted at least 50 drug investigations resulting in warrants being issued, commercial quantities of drugs seized, and felony arrests. I have become familiar with how drug traffickers operate.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for Anthony Barrera (hereinafter, "BARRERA"), a Hispanic male, with a date of birth of XX/XX/1995, for committing the following federal crimes:

(A) Possession with Intent to Distribute Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); and

(B) Possession with Intent to Distribute Cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii).

4. For the reasons stated below, I have probable cause to believe, and I do believe, that BARRERA has violated the above-cited federal statutes.

5. This affidavit is intended only to show that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Applicable Law**

6. Title 21, United States Code, Section 841(a)(1) makes it illegal to manufacture, distribute, and possess with the intent to manufacture or distribute a controlled substance, including more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine and cocaine.

/ / /

/ / /

**<u>Background of Investigation</u>**

7. In March 2025, members of the Multnomah County Sheriff's Office Special Investigations Unit ( MCSO SIU) and the Federal Bureau of Investigation (FBI) began conducting an investigation into a drug trafficker, identified as Anthony BARRERA, who was distributing commercial quantities of methamphetamine within the District of Oregon. [redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

**May 24, 2025, Seizure of Methamphetamine and Cocaine**

11. During the course of the investigation into BARRERA, I obtained federal warrants for prospective and historical geolocation data from two phone numbers associated with BARRERA. After serving these warrants, I began receiving repeated GPS locations for both cellphones in BARRERA's possession. I reviewed the historical geolocation data for one of the phone numbers and observed the GPS locations travel to Southern California on three separate occasions.

12. On May 21, 2025, I observed the GPS locations for BARRERA's phones travel to Southern California and, based on my investigation, I believed it was highly likely that BARRERA was picking up a commercial quantity of drugs with the intent to transport them back to Oregon for further distribution.

13. On May 22, 2025, I received an administrative subpoena, which I served to Hertz Car Rental. I learned that BARRERA rented a blue 2025 Chevy Equinox bearing Oregon license plate 633QCA (hereinafter, the "Chevy Equinox") from Hertz Car Rental for the time period of May 20 to May 27, 2025. I also learned BARRERA had rented the vehicle using his Oregon identification and booked the reservation under his name. I ran the license plate of the Chevy

Equinox in a license plate reader and saw a photo of the Chevy Equinox in California. I viewed the cellphone GPS location data for BARRERA's cellphones and observed it was in the same area as the Chevy Equinox at the time the Chevy Equinox was captured by the license plate reader.

14. On May 23 and 24, 2025, I obtained federal search warrants to search residences frequented by BARRERA (XXX NE Ginseng Dr., Estacada, OR and XXXX SE 176th Ave., Portland, OR), and his primary vehicle (a 2015 silver Dodge Ram 3500 bearing OR plate OF6321).[1]

15. I also obtained anticipatory federal search warrants for BARRERA's rental vehicle (the Chevy Equinox), and his person. These warrants were to be executed when BARRERA and his rental vehicle (the Chevy Equinox) reentered the District of Oregon. The warrants were signed by the Honorable United States Magistrate Judge Jeffrey Armistead.

16. On May 24, 2025, I observed BARRERA's GPS locations travel northward from Southern California towards Oregon. After monitoring BARRERA's GPS location throughout the day on May 24, members of SIU and the FBI drove to Southern Oregon in anticipation of spotting BARRERA in the Chevy Equinox, stopping him, and executing the search warrants.

17. At approximately 7:00 pm on May 24, Detective Read observed BARRERA traveling northbound on the I-5 in the Chevy Equinox. SIU and the FBI followed him. BARRERA stopped at a rest area north of Roseberg, Oregon and got out of the Chevy Equinox to smoke a cigarette. I was wearing my agency-issued raid vest displaying Sheriff identifiers. I along with other members of SIU contacted BARRERA and took him into custody without incident.

---

[1] The exact addresses and birthdates contained herein are known to me but have been omitted because this affidavit could become publicly filed.

18. I recited Miranda Rights to BARRERA, which he acknowledged he understood by saying "yes." I read the search warrants aloud to BARRERA, who was compliant. He told me he had no questions. He told me there were drugs in the Chevy Equinox concealed in bags in the backseat and cargo area. BARRERA clarified that the drugs were methamphetamine and cocaine.

19. BARRERA estimated there was over 200 pounds of methamphetamine in the Chevy Equinox. BARRERA told me 20 pounds of the methamphetamine belonged to him and the remainder belonged to someone else. He would not detail who the remaining drugs were for or how the drugs would get to this person. BARRERA told me he had no place of employment and sold drugs to sustain a living. He told me he traveled to Southern California to pick up the drugs and he estimated that he had made this trip to resupply himself with drugs at least three times in 2025.

20. BARRERA told me he lives in Estacada at XXX NE Ginseng Dr. and would occasionally spend the night at his mother's house in Portland (XXXX SE 176th Ave.). He told me there were two firearms at his residence in Estacada and further explained they were in his bedroom closet in an underground hole that was obscured by a removable piece of flooring. BARRERA told me the firearms were a Taurus Judge revolver and a Colt Pony 380 pistol and he had obtained both firearms from street drug deals. He told me he is a felon and should not have the firearms.

21. Members of SIU and the FBI searched the Chevy Equinox pursuant to the federal search warrant and located one brick of suspected cocaine and numerous large sized packages of suspected methamphetamine wrapped in aluminum foil and cellophane wrap. All exhibits of methamphetamine and the cocaine were concealed in bags in the rear of the Chevy Equinox. Three

cellphones were also seized from the Chevy Equinox, two apple iPhones that I identified as the cellphones I was receiving GPS location data from and an Android phone.

22. BARRERA detailed which iPhone was his personal phone and which one was his "business" phone. He also told me the Android was his "business" phone. BARRERA provided the passcodes for the cellphones and provided consent to search them.

23. All items of evidence were secured and transported to the Sheriff's Office. The Chevy Equinox was secured and left in the parking spot. Parole and Probation Officer Sandberg and I transported BARRERA to the Clackamas County Sheriff's Office, where he was placed in the rear seat of a Multnomah County patrol vehicle and transported to the Multnomah County Detention Center.

24. Members of SIU and the FBI then went to XXX NE Ginseng Dr., Estacada, OR to execute the federal residence search warrant. The residence was cleared with no occupants located inside. SIU and the FBI searched the residence and located two firearms in BARRERA's downstairs closet in an underground hole, just as BARRERA had described. The firearms were a Taurus Judge revolver and a Colt Pony 380 pistol. Both were seized along with an apple iPad found in BARRERA's bedroom. All items of evidence were transported to the Sheriff's Office.

25. All items of evidence were later lodged in a Sheriff's Office evidence locker. Detective Read conducted a Mobile Field Detect Test on one of the exhibits of suspected methamphetamine found in the Chevy Equinox, which showed a presumptive positive result for methamphetamine. All exhibits of methamphetamine combined weighed approximately 270 pounds.

26. Detective Read conducted a Mobile Field Detect Test on the suspected brick of cocaine found in the Chevy Equinox which showed a presumptive positive result for cocaine and weighed 1,047.2 grams.

27. A photo of the narcotics seized from the Chevy Equinox can be found below:





28. I know from training and experience as a narcotics officer that cocaine, as most commonly seen in the Portland metropolitan area, is a white powder or small irregularly shaped white rocks. Cocaine is a stimulant derived from coco leaves. Cocaine ranges in user quantity from one-quarter gram to one ounce or more.

29. I know from training and experience as an officer that methamphetamine, as most commonly seen in the Portland metropolitan area, is a white crystalline or powder substance, frequently displaying a distinctive cleaning chemical odor and frequently packaged in small glassine baggies. Methamphetamine ranges in user quantity from one-quarter gram to one ounce

or more.

30. I also know from my training and experience that drug traffickers possess firearms as "tools of the trade" in furtherance of their drug trafficking activities. I know that drug traffickers possess firearms for a variety of reasons, to include: first, having an accessible gun provides defense against anyone who may attempt to rob the trafficker of their drugs or drug profits; second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted; third, having a gun accessible during a transaction provides protection in case a drug deal turns sour; fourth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place; and, fifth, having a gun may allow the drug trafficker to defend their residences or "stash houses" from which they operate. I also know that the cocaine and methamphetamine trade in Portland, Oregon is inherently dangerous and commonly drug dealers possess guns for protection.

## Conclusion

31. Based on the foregoing, I have probable cause to believe, and I do believe, that BARRERA has committed the following federal crimes:

(A) Possession with Intent to Distribute Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); and

(B) Possession with Intent to Distribute Cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

I therefore request that the Court issue a criminal complaint and arrest warrant for BARRERA.

32. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Charlotte Kelly. AUSA Kelley advised me that in her opinion the affidavit and complaint are legally and factually

sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

**Request for Sealing**

33. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information is relevant to an ongoing investigation and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize the investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*By phone pursuant to Fed R. Crim. P. 4.1*
JARRETT MILLER
Special Federal Officer
Federal Bureau of Investigations

Sworn by telephone at 9:31 am a.m./p.m. on May 26, 2025, in accordance with the requirements of Fed. R. Crim. P. 4.1.

/s Jeff Armistead
H N R BLE JEFFREY RMI TE D
United States Magistrate Judge